**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GAIATOP LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SHENZHEN JISU KEJI YOUXIANGONGSI, <br><br> Defendant. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 25-619 (KMW-MJS) <br><br> **OPINION** |

APPEARANCES:

LANCE LIU, ESQ.
LANCE LIU
15 MINUTEMAN CIRCLE
SOUTHBURY, CT 06488

*Counsel for Plaintiffs Gaiatop LLC and Xiantaoshiangsenshangmaoyouxianggongsi*

LAURA E. KRAWCZYK, ESQ.
KATHERINE MARGUERITE LIEB, ESQ.
SILLS CUMMIS & GROSS P.C.
101 PARK AVENUE, 28TH FLOOR
NEW YORK, NY 10178

*Counsel for Defendant Shenzhen Jisu Keji Youxiangongsi*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Plaintiffs Gaiatop LLC and Xiantaoshiangsenshangmaoyouxianggongsi, ("Xiantao"), (collectively, "Plaintiffs"), filed suit seeking declaratory judgment against Defendant Shenzhen Jisu Keji Youxiangongsi, ("Defendant"), asserting that Defendant's "Neck Fan" patents and "Handheld Fan" patent, (further defined below), are invalid due to the presence of prior art publications disclosing the claimed invention prior to the filing date and/or priority date. *See* Second Amended Complaint, ("SAC"), ¶¶ 21-28. Plaintiffs also assert that the Neck Fan patents are unenforceable due to patent misuse, accusing Defendant of engaging in a price-fixing scheme, further violating New Jersey's law against unfair trade practices, (N.J.S.A. § 56:8-2).

This matter comes before the Court on Defendant's Motion for Preliminary Injunction, (ECF No. 24). Plaintiffs opposed the motion, (ECF No. 35), and Defendant replied, (ECF No. 39). The Court held oral argument on July 28, 2025, and heard the arguments of counsel.[1] For the reasons that follow, Defendant's Motion for Preliminary Injunction, (ECF No. 24), will be **GRANTED**.

## II. BACKGROUND

Both Plaintiff Xiantao and Defendant are Chinese companies who market various types of fans through Amazon's online platform, and through other retailers such as Walmart. *See* SAC ¶¶ 2-4.[2] They are direct competitors: Defendant is considered to be the market leader in fan sales, and Plaintiff Xiantao is considered "third." *See* Tr. at 22:18-20, 23:14-15. The parties are even

---

[1] The Court notes the appearances of counsel at the July 28, 2025 hearing: Lance Liu, Esq. and Kendal Sheets, Esq., for Plaintiffs; Scott Stimpson, Esq., and Laura E. Krawczyk, Esq., for Defendant.

[2] It is still unclear to the Court why Gaiatop LLC is a party to this case given counsel's representation that "[t]he LLC has nothing to do with this case[,] but it is an entity owned by the plaintiff." Tr. 21:9-10. Plaintiff Gaiatop LLC is a New Jersey limited liability company, asserted to be an entity created to receive returned fans in the United States. SAC ¶ 1; Tr. at 21:5-15

more familiar with each other because this action is not the parties' first dealings with each other.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████ ██████████████████████████████████████████

████. However, the SAC states that Defendant "demanded that Plaintiffs must (i) pay to license the Handheld Fan Patent and (ii) fix the price of the neck fans at the same level as all the other licensees, as preconditions for license renewal of the Neck Fan Patents," and that "Defendant and several neck fan sellers signed agreements to control the price of neck fans in the United States and such agreements are horizontal price-fixing agreements because Defendant and the other sellers sell neck fans into the same market in the United States." SAC ¶¶ 14-16. Plaintiffs assert that they "refused to fix the price of neck fans and further refused to tie the handheld fans to the neck fans," and that Defendant "retaliated" by terminating the license of the "Neck Fan," and threatened litigation. *Id.* ¶¶ 17-18.

But it was Plaintiffs who brought the instant suit. On January 19, 2025, Plaintiffs filed suit and subsequently filed the operative SAC on May 19, 2025. The SAC asserts three claims for

---

[3] Along with "Gaiatop Network," an entity not included in this suit.

declaratory judgment and one claim asserting a violation of New Jersey's law against unfair trade practices, (N.J.S.A. § 56:8-2). *See* SAC ¶¶ 21-36. Specifically, Plaintiffs declaratory judgment claims only include invalidity arguments on the basis of existing prior art involving Defendant's "Neck Fan" patents, (further defined below), and one foldable fan patent, and an unenforceability argument against the "Neck Fan" patents in relation to Plaintiffs' accusation of price-fixing. *See Id.* ¶¶ 21-32.

On June 25, 2025, Defendant filed its Motion for Preliminary Injunction. At issue in this motion are three categories of Defendant's patents encompassing three fan types: the "foldable fan," the "neck fan," and the "portable fan." *Id.* at 3. The "Foldable Fan Patent" includes Defendant's design Patent No. D886,982, (the "'982" Patent). *Id.* The "Neck Fan Patents" includes Defendant's utility Patent Nos. 11,635,083, (the "'083" Patent), 11,661,947, (the "'947" Patent), and 11,920,602, (the "'602" Patent). *Id.* The "Portable Fan Patents" includes Defendant's design Patent Nos. D1,069,084, (the "'D084" Patent), and D1,077,190, (the "'D190" Patent). *Id.*

Defendant asserts that Plaintiffs have "made a business of copying [Defendant's] successful fan designs," and are unlikely to satisfy any judgment against it: in support Defendant points to Plaintiff Gaiatop LLC as a "sham" entity, set up for the purpose of this litigation, and that Plaintiffs have a habit of "disappearing," through changing their corporate identity, along with their allegedly illicit profits. *See* Mot. for Preliminary Injunction at 2-3, 11-13. Defendant asserts that irreparable harm is occurring due to the stark price differential between Defendant and Plaintiffs, whereas Defendant sells its fans for $59.49. and Plaintiffs sells for $9.98, causing price erosion, and that Plaintiffs have obtained significant market share as a result. *Id.* at 13-14; Exs. 7-8.

On July 13, 2025, Plaintiffs responded. Although Plaintiffs' briefing did not address several issues, as noted by Defendant's reply on July 21, 2025, at the hearing Plaintiffs affirmed that it subjected themselves to this forum by bringing suit and would not "disappear" itself or its assets from the Court's reach. Tr. at 22:15-25; 23:1-25; 25:5-22. In their opposition briefing, Plaintiffs assert that they have their own patent that informs their foldable fan product, Patent No. D1,058,781, (the "'D781" Patent), which was issued on January 21, 2025. *See* Opp. at Ex. 1.[4] Plaintiffs further alleged inequitable conduct by Defendant, including falsely identifying itself to the U.S. Patent Office as a micro-entity, not providing the U.S. Patent Office with pertinent prior art, and deleting a weblink that showed "undisclosed prior art." *See* Opp. at 15-18. Moreover, Plaintiffs assert for each category of fan that their products do not infringe Defendant's patents, (with the exception of Defendant's '602 Patent). *Id.* at 11-12, 20-23, 26-28, 32-33. Plaintiff further asserts that Defendant's patents are invalid due to prior art from Korea, China, and Japan. *Id.* at 19, 23-25, 27-31.

Thus, Defendant's Motion for Preliminary Injunction is ripe for decision.

## III.   LEGAL STANDARDS

Preliminary injunctive relief is "an extraordinary remedy, which should be granted only in limited circumstances. The primary purpose of preliminary injunctive relief is maintenance of the status quo until a decision on the merits of a case is rendered." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). To obtain a preliminary injunction, the moving party must show:

> 1. that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant,
>
> 2. a reasonable probability of eventual success in the litigation, and

---

[4] The 'D781 Patent was filed on May 15, 2024. *Id.*

5

>   3. the possibility of harm to other interested persons from the grant or denial of the injunction, and
>   4. the public interest.

*Id.* The first two factors are considered the "most critical" factors. *Id.* at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). If the first two "gateway" factors are met, a court may then proceed to consider the remaining two factors and determine if all four factors, taken together, balance in favor of granting the requested relief. *Id.*

## IV. DISCUSSION

### A. Irreparable Injury

To demonstrate irreparable injury, the moving party has the burden of proving a clear showing of immediate injury which must be "irreparable – not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it," *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). The time sensitive nature of the injury is important to the analysis, because the injury must be something "which cannot be redressed by a legal or an equitable remedy following a trial," *Instant Air freight Co. v. C.F. Air freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989), and therefore a preliminary injunction must be the only way of protecting the moving party from harm.

Here, Defendant asserts that it is suffering from significant price erosion and loss of market share due to Plaintiffs' low price point. *See* Mot. for Preliminary Injunction at 31-33; Exs. 7-8 (showing Plaintiffs selling price for portable fans at $9.98 and Defendant's price of $59.49). Price erosion, loss of business opportunities, and loss of market share, are considered irreparable injuries due to the substantial difficulty to reverse such occurrences. *Fresenius Kabi USA, LLC v. Fera Pharms., LLC*, No. 15-3654, 2016 WL 5348866 at *13 (D.N.J. Sept. 23, 2016). Further, the right to exclude direct competition is a right inherent to the grant of a patent, is irreparably harmed by the competitive foothold that the infringer gains on a market. *Id.* Given the uncontested fact of

the significant price differential between Plaintiffs' and Defendant's products, the Court is satisfied that such irreparable harm is occurring in this case. In addition, where sales are lost to a direct competitor—the parties do not contest that they are direct competitors, and in fact Plaintiffs professed at the hearing that Defendant was "first" and Plaintiffs "third" in the portable fan industry—it "suggest[s] strongly the potential for irreparable harm without enforcement of the right to exclude," even where a patentee does not practice the patent, is considered irreparable harm sufficient to sustain a preliminary injunction. *In re Selenious Acid Litig.*, No. 24-7791, 2025 U.S. Dist. LEXIS 242460 at *69-73 (D.N.J. Jul. 8, 2025); *see also* Tr. at 22:18-20, 23:14-15.

Moreover, a patentee must show that there is a sufficiently strong causal nexus between the infringement and the harm, in that there must be a connection between the lost sales or market share and the "infringing feature" of the competing product because sales lost due to consumers buying an alternative product for reasons other than the patented feature will not constitute irreparable harm. *Id.* With the benefit of the side-by-side comparisons of the products provided to the Court at the hearing, it is obvious that the losses from sales are due to the equivalent features of the products at issue.

A significant concern for this Court is the allegation of Plaintiffs "disappearing" and being unable to provide any assets to satisfy judgment should the Court find in favor of Defendant. This is especially disconcerting where, as here, Defendant seeks the remedy of disgorgement of profits should the Court rule in its favor pursuant to 35 U.S.C. § 289. Plaintiffs assured the Court at the hearing that the sellers that Defendant asserted was Gaiatop "disappearing" were actually licensees of Plaintiffs' products, and the fact that Plaintiffs brought this case against Defendant should demonstrate to the Court that it would comply with its orders. *See* Tr. At 22:5-17, 23:2-17. However, there remains significant unanswered questions about Plaintiffs' businesses, and the

7

uncontested fact that ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ gives further weight to Defendant's concerns of Plaintiffs' ability and willingness to satisfy a judgment if the Court were to find in favor of Defendant. Therefore, the Court finds the first factor weighs in favor of Defendant.

## B. Likelihood of Success on the Merits

The requirement of "likelihood of success on the merits" is satisfied "if the moving party make[s] a showing of a reasonable probability, not the certainty, of success on the merits[.]" *Aleynikov v. Goldman Sachs Group, Inc.*, No. 12-5994, 2012 U.S. Dist. LEXIS 181852 at *23-24 (D.N.J. Dec. 14, 2012). "an issued patent comes with a statutory presumption of validity," and an alleged infringer must "prove invalidity by clear and convincing evidence," which requires the trier of fact to have "an abiding conviction that the truth of [the] factual contentions are . . . highly probable," *In re Selenious Acid Litig.*, No. 24-7791, 2025 WL 1900949 at *6 (May 27, 2025). However, an accused infringer can defeat a showing of likelihood of success on the merits by demonstrating "a substantial question of . . . infringement," through "the evidence presented in support of invalidity *rais[ing] a substantial question*[.]" *Id.* (emphasis in original). A patentee can overcome a "substantial question," regarding validity if they can present evidence to show that the invalidity defense "lacks substantial merit." *Id.* In all, the Court must consider and balance all the evidence before it. *Id.* at *6 n.5.

The Court will address each patent type in turn—the Foldable Fan Patent, the Neck Fan Patents, and the Portable Fan Patents—and then will address Plaintiffs' assertions of inequitable conduct.

### a. Foldable Fans

Plaintiffs assert that their foldable fan is based on their own design patent, the 'D781 Patent, not Defendant's. *See* Opp. at 10-11. Notably, Plaintiffs' patent was filed on May 15, 2024 and cited to Defendant's '982" Patent in its references section. *See* Opp. at Ex. 1. The date of the 'D781 Patent application filing is important because Plaintiffs were already embroiled with Defendant regarding ███████ and sales of the foldable fan and neck fans. *See* Mot. for Preliminary Injunction at 6-7; Tr. at 26:17-24. Further, "the existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991); *see also Atlas Powder Co. v. E.I. du Pont De Nemours & Co*, 750 F.2d 1569 at 1580-81 (Fed. Cir. 1984). Moreover, the Patent Office is not the final arbiter of whether or not a patent infringes another because when "examining the second application, the Patent Office has no concern with the scope of the claim of the first, and does not and must not pay any attention thereto. It is concerned only with the early disclosure by the specification and drawings[,]" unlike when a patent issue is brought before a court for decision. *Atlas Powder Co.*, 750 F.2d at 1580-81, (quoting *Herman v. Youngstown Car Mfg. Co.*, 191 F. 579, 584-85 (6th Cir. 1911)). Consequently, simply stating that Defendant's Foldable Fan Patent did not anticipate Plaintiffs' 'D781 Patent because it was patented is not a sufficient defense.[5]

Design patent anticipation "requires a showing that a single prior art reference is 'identical in all material respects' to the claimed invention. In other words, the two designs must be

---

[5] The Court notes that Plaintiffs mention that because their design was patented, it demonstrated that Defendant's patent neither anticipated no rendered obvious Plaintiffs' design, Plaintiffs do not discuss any obviousness arguments. The Court will not take up an obviousness analysis, as it need not debunk both arguments for the purpose of deciding this Motion.

9

substantially the same." *Tristar Prods. v. E. Mishan & Sons, Inc.*, No. 17-1204, 2017 WL 1404315 at *3 (D.N.J. Apr. 19, 2017) (internal citations omitted). Courts have found that two designs are "substantially the same" when "resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other." *Id.* The Court finds Plaintiffs' direct comparison chart between Defendant's Foldable Fan Patent, Plaintiffs' 'D781 Patent, and Plaintiffs' "foldable fan product" at issue, helpful to demonstrate how, in fact, these three products are substantially the same. *See* Opp. at 10-11. The ordinary observer would note that the tubular shape of the fans are identical, with a small hinging component at one end, when opened, permitting the fan to stand on its own on a flat surface. *Id.* In the open position, the button to turn the fan on and off are in the same place, and the fan wings are the same shape. *Id.* Notably, the chart only includes Figure 5 of Defendant's Patent, and Figure 13 of Defendant's Patent includes the rounded "bear ears" that are in the same place as the "horns" of Plaintiffs' product. *Compare* Opp. at 10-11; Mot. for Preliminary Injunction at 4. The only slight differences the Court can glean are the charging ports, where Plaintiffs' product places them at the bottom of the fan (in the closed position), and Defendant's product places them at the lower part of the fan in the open position,[6] and the presence of small "fins" on the body of Plaintiff's fan. *Id.* During the presentation of the fans in oral argument by Defendant, the Court could not discern the differences between the two items. Tr. at 6:21-25, 7:1-9. The Court notes that it must evaluate any differences in the context of the claimed design as a whole, and "not in the context of separate elements in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). An "element-by-element

---

[6] The Court notes that both Defendant's Patent and Plaintiffs' Patent do not claim the location of the charging ports as part of the patented design. *See* Opp. at Ex. 1; Mot. for Preliminary Injunction at Ex. D, (both noting that the broken lines shown in the drawings depict portions of the design that is embodied in the form but not part of the claimed design).

10

comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error. Courts properly focus on the patented design's overall ornamental visual impression rather than . . . the broader general design concept." *Id.* With regard to the foldable fans, the slight visual differences with the "fins" and the pointy "horns" rather than rounded "ears" is not "sufficiently distinct" for the Court.

Thus, the Court finds that "in the eye of an ordinary observer, giving such attention as a purchaser usually gives," the two designs are substantially the same and a purchase would be induced into purchasing one when "supposing it to be the other." *Gorham Manufacturing Co. v. White*, 81 U.S. 511, 528 (1872). For the Court to find otherwise would "permit imitation of a patented invention which does not copy *every literal detail* [and] convert the protection of the patent grant into a hollow and useless thing." *Saes Getters S.P.A. v. Ergenics, Inc.*, No. 89-649, 1990 U.S. Dist. LEXIS 16485 at *10 (D.N.J. Apr. 9, 1990).

### b. Neck Fans[7]

At the outset, the Court must address and reiterate that the operative document, the SAC, controls in this case. That is important because the SAC does not assert any non-infringement defenses. The SAC asserts three claims for declaratory judgment and one claim asserting a violation of New Jersey's law against unfair trade practices, (N.J.S.A. § 56:8-2). *See* SAC ¶¶ 21-36. Plaintiffs' declaratory judgment claims only include invalidity arguments on the basis of existing prior art involving Defendant's Neck Fan Patents and the Foldable Fan Patent, and an unenforceability argument against the Neck Fan Patents in relation to Plaintiffs' accusation of price-fixing. *See Id.* ¶¶ 21-32. The concession of the noninfringement claims in the SAC speaks volumes as to their ability to carry their burden regarding their noninfringement arguments here.

---

[7] Plaintiffs assert that "Neck Fan Product #2" is not a Gaiatop product, and therefore the Court will not engage in analysis of this product. *See* Tr. at 41:20-25, 42:1-7.

11

### 1. The '083 and '947 Neck Patents

Plaintiffs assert that their neck fan product does not infringe Defendant's '083 and '947 Neck Patents because claim 1 of both patents require a "second side wall [with] a plurality of air inlets," and Plaintiffs' product has small openings that provide an insertion space for a decorative cover. *See* Opp. at 21-22, 26; Tr. at 40:12-18.[8]

To evaluate a claim of infringement, the Court must determine if a product embodies each claim element or its equivalent. *See TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 784 (Fed. Cir. 2019). First, the Court must determine the meaning and scope of the patent claims asserted to be infringed, and second, the Court must compare the properly construed claims to the device accused of infringement. *See Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (internal citations omitted).

First, the Court must determine the meaning and scope of the patent claims asserted to be infringed. Plaintiffs assert that Defendant is "misinterpreting" its independent claims 1 and 10, emphasizing the language of a "plurality of inlets between the edge of the cover and the second side wall." *See* Opp. at 20-21. Plaintiffs provide images to distinguish their product, noting that "[t]he cover is sealed to the second side wall and is for decoration purposes only. There is also no plurality of air inlets for it to correspond to Neck Fan Product #1[,]" and "[t]here is no gap which is communicated with the plurality of air inlets as the cover is only for decoration and the space between the edge of the cover and the second side wall is sealed to prevent air passage." *Id.* at 21-22. There does not appear to be any disagreement about what a "plurality of inlets" is defined to be per Defendant's Neck Fan Patents: that there are openings present on the second side wall that functions to permit air into the cavity. This demonstrates to the Court that the parties are

---

[8] Plaintiffs also assert that their product does not infringe against Defendant's '083 Patent because the tenth and eleventh claims also refer to a plurality of air inlets that are on the second side wall.

interpreting the claim terms according to their "ordinary and customary meaning." Therefore, the Court can proceed to the second step.

Second, the Court must compare the properly construed claims to the device accused of infringement. To establish literal infringement, every limitation in a claim must be found in the accused product exactly. *See Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016). Pursuant to the doctrine of equivalents, infringement can be found where "there is equivalence between the elements of the accused product . . . and the claimed elements of the patented invention." *Id.* The burden is on the patentee to prove infringement by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

As noted above, Plaintiffs argue that there is not a "plurality of air inlets" on the outer wall of their "Neck Fan Product #1" but Defendant asserts that there are approximately seven "holes" in the outer wall. The disassembled Gaiatop fan product provided as Exhibit 21 by Defendant allegedly shows small "holes" that Plaintiff argues are the slits for the decorative ring cap. *See* Reply, Exs. 15, 21. Defendant asserts that these small "holes" would still provide an equivalent function for "Neck Fan Product #1." Thus, Defendant has demonstrated that there is a plurality of "holes" of some kind on the outside wall of the device through physical inspection. *See Shenzhen Jisu Tech. Co. v. P'ships & Unincorporated Ass'ns*, No. 24-4152, 2024 WL 4356392 at *5 (N.D. Ill. Oct. 1, 2024). The Court notes that, even though the "holes" appear to be designed to accommodate the decorative cap, the fit is not airtight, as evidenced by Exhibit 21. While the assertion that such small holes are functional beyond providing a connection with the decorative feature seems less than certain, Defendant need not prove the functional equivalent at this juncture, just that there is a reasonable probability of success on the merits that the doctrine of equivalents

is satisfied by the preponderance of the evidence. Therefore, the Court finds that Defendant made a sufficient showing of evidence to demonstrate infringement of "Neck Fan Product #1" with the '083 and '947 Patents.[9]

### 2. The '602 Patent

Plaintiffs do not contest Defendant's argument that there is literal infringement against the '602 Patent, rather, that the Japanese, Korean, and Chinese patents "would be invalid if those claims are interpreted to cover Neck Fan Product #1." Opp. at 30-31. The Court notes that Plaintiffs' comparison charts, Exhibits 18, 19, and 20, leave the Court wanting. There are no descriptors in Plaintiffs' fan product column to guide the Court in explaining the differentiation between the element that Plaintiffs assert was disclosed by the foreign patents, and the claim from Defendant's '602 Patent. For example, in Exhibit 18, the 'JP266 Patent does not have any diagrams or pictures demonstrating any type of internal structures, despite the chart asserting that the 'JP266 Patent "disclosed" the internal structures of Defendant's '602 Patent. *See* Opp. at Ex. 18. Similarly, in Exhibit 19, the images proposed for the 'KR138 Patent are a single figure repeated for all eight elements without any indication as to how the art is purportedly disclosing any particular element. Exhibit 20 is so distinguishable from both Plaintiffs' and Defendant's products that it strains credulity as to why it was proposed as disclosing any of the internal elements of the products at issue: from the image itself, there does not appear to be any internal receiving space, but simply a single fan at the end of a headband-like structure. *See* Opp. at Ex. 20. The Court cannot find from this paltry showing that Plaintiffs have demonstrated with clear and convincing evidence that Defendant's product is invalid by these extraneous patents. If anything,

---

[9] Because the Court finds that Plaintiffs' product infringes Defendants' Neck Fan Patents '083 and '947 through the doctrine of equivalents, the Court need not address the additional arguments regarding the Japanese, Korean, and Chinese patents for the purpose of this Motion.

14

it only further demonstrates how closely Plaintiffs' product copies the function and style of Defendants' claimed elements. Therefore, the Court finds that Plaintiffs' do not carry their burden with regard to Defendant's Neck Fan Patents.

### c. Portable Fans[10]

Plaintiffs' straightforward non-infringement arguments regarding the Portable Fan Patents rest primarily on Plaintiffs' mere assertion that there are "substantially different design features," between Plaintiffs' product and the Portable Fan Patents, "especially the top view and the bottom view," and that Plaintiffs' product is closer to a prior art design. *See* Opp. 32-33, Ex. 21 & 22. Even a cursory glance between the three models shows obvious differences from the prior art, and substantially similar, if not identical, features between Plaintiffs' product and the Portable Fan Patents. First, and most obvious, is the handle: the prior art has a tubular shaped handle with a rounded base, that would not permit the fan to stand upright on its own, in stark contrast to Plaintiffs' product and the Portable Fan Patents, both having a thicker handle and a flat bottom, enabling the fans to stand on their own on a flat surface. *Id.* The face and rear view of the fans are essentially the same between the Plaintiffs' product and the Portable Fan Patents, with a larger front circle, and in the back, the angles are straight, in comparison to the prior art, which has a similarly large face that appears to be more inset into the fan, and its back angles being curved in an intentional design. *Id.* The Court cannot discern any difference between the bottom view of the bases of Plaintiffs' product and the Portable Fan Patents. *Id.* From the top view, there is a barely discernable angle that seems to taper the fan from front to back on Plaintiffs' product, whereas the Portable Fan Patents appears to hold the same cylindrical shape from front to back. *Id.* At the hearing, the demonstration between Plaintiff's product and Defendant's product also

---

[10] Because Plaintiffs arguments are the same for each Portable Fan Patent, and both fail for the same reasons, the Court will address the two Patents together.

solidified for the Court that the products at issue are essentially identical. *See* Tr. at 17:12-25, 18:1-25, 19:1-14. Thus, the Court finds that Plaintiffs have not raised a substantial question concerning the validity or infringement regarding the Portable Fan Patents.

### d. "Inequitable Conduct"

Plaintiffs assert that Defendant engaged in inequitable conduct, which can be a defense to patent infringement, in that if inequitable conduct is proved the enforcement of the patent at issue would be barred. *Fresenius Kabi USA, LLC*, 2016 WL 5348866 at *9. To establish that a patent is unenforceable because it was procured by inequitable conduct, the infringer must establish by clear and convincing evidence:

> 1. affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information; and
> 2. an intent to deceive.

*Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366 (Fed. Cir. 2006). Here, The Court does not find Plaintiffs' arguments of inequitable conduct persuasive.

First, Plaintiffs accuse Defendant of price fixing in regard to the licensing dispute between the parties. It is axiomatic in patent law that a patent owner is entitled to "grant a license to make, use, and vend articles under the specifications of [the] patent for any royalty, or upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure." *FTC v. Endo Pharms. Inc.*, 82 F.4th 1196, 1204 (D.C. Cir. 2023). This includes, under certain conditions, a fixed price. *See FTC v. Actavis, Inc.*, 570 U.S. 136, 150 (2013). However, there is not a clear division between patent laws and the antitrust laws, and the history of the distinction between the two is "untidy." *Newburgh Moire Co. v. Superior Moire Co.*, 237 F.2d 283, 293 (3d Cir. 1956). Generally, "patent laws were not intended to empower a patentee to grant a plurality of licenses, each containing provisions fixing the price at which the

16

licensee might sell the product or process to the company, and that, if a plurality of licenses are granted, such provisions therein are prohibited by the antitrust laws." *Id.* at 293-94. A "plurality" is an undefined concept: the Supreme Court has clearly found that patentees violate the Sherman Act when "substantially all" of an industry is involved in the price-fixing through licenses, but the degree of industry involvement is not precisely defined between a "mere plurality" and a violative conspiracy. *Id.* at 292-93. Here, the evidence presented by Plaintiffs on this point is not "clear and convincing," and is simply insufficient to overcome the presumptive validity of Defendant's patents. *In re Selenious Acid Litig.*, No. 24-7791, 2025 WL 1900949 at *6 (May 27, 2025). Plaintiffs have only provided the licensing agreement presented to it that contains a price fixing proviso and does not articulate how much of the portable fan industry is involved in Defendant's licensing. SAC at Ex. 13.[11] Without more, the Court cannot find that Defendant's licensing practice rises to the level of inequitable conduct that would deprive it of its patent rights.

Further, Plaintiffs assert that Defendant intentionally deceived the U.S. Patent Office by not disclosing prior art and possibly deleting a link in an attempt to "hide evidence" of undisclosed prior art. *See* Opp. at 13-18. Allegedly, Defendant was selling a portable handheld rechargeable flashlight fan on Amazon starting on September 6, 2017. *Id.* at 13. Plaintiffs point to a link from Amazon as proof, asserting that Defendant intentionally deleted the page to hide this "undisclosed prior art." Aside from this accusation, Defendant provides no concrete evidence to demonstrate that Defendant intentionally withheld information from the U.S. Patent Office.

While Plaintiffs assert that they attempted to access the link and it produced an error message, Opp. at Ex. 5, Defendant asserts that the link itself is still active and has been updated to reflect the current fan that is for sale, and that the link in prior years was advertising an older fan

---

[11] While Plaintiffs assert a price-fixing argument on page 20 of its Opposition brief, the Exhibits attached to the Opposition do not contain the licensing agreement. The licensing agreement was provided in Plaintiffs SAC.

17

that was not similar in any way to the patented product it now sells. *See* Reply at Ex. A; Tr. at 9:13-25, 10:1-20. But, as the Court noted at the hearing, Amazon links can be updated to reflect new products over time, and that the information present on the webpage may not necessarily be correct or accurate over time. Tr. at 30:1-2; 32:24-25, 33:1-2, 17-21. Thus, the Court does not find the controversy surrounding the Amazon link to plausibly demonstrate that Defendant intended to deceive the U.S. Patent Office or hide prior art, let alone clearly or convincingly.

Plaintiffs also point to Defendant filing as a "micro-entity," as demonstrative of Defendant's deceptive conduct. *See* Opp. at Ex. 9. Defendant provided documentation in its Reply that the micro-entity filing was in error, and that the company is actively engaged with the U.S. Patent Office to correct the issue. *See* Reply at 6-8, Ex. 13. Given that Defendant has produced evidence to demonstrate that it is working with the U.S. Patent Office to correct this error on its own accord, the Court does not find this accusation sufficient to demonstrate clearly and convincingly that Defendant has intentionally attempted to deceive the U.S. Patent Office.

Ultimately, Plaintiffs' assertions of inequitable conduct are simply that, assertions. Assertions are not sufficient to meet the clear and convincing standard required. Given the above, the Court finds that the second factor weighs in favor of Defendant.

### C. Possibility of Harm/Balance of Equities

Once a movant has established the first two "gateway factors," the Court must also consider possible harms to other interested persons from the grant or denial of the injunction, including the nonmovant. *Longo v. Envtl. Prot. & Improvement Co.*, No. 16-9114, 2017 WL 2426864 at *11 (D.N.J. Jun. 5, 2017). When considering the balance of equities, the "relative economic wherewithal" of the parties should have no legal significance unless the smaller, weaker party faces bankruptcy or the total loss of the business. *See Aleynikov*, 2012 WL 6603397 at * 14; *see*

18

*also Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) (holding that where potential economic loss is so great as to threaten the existence of the movant's business, irreparable injury is shown).

Here, Plaintiffs do not assert in their briefing any clear injuries that they would sustain if enjoined from selling the allegedly infringing fans. In fact, in its Opposition, Plaintiffs do not address this factor for the issuance of injunction at all, rather, it appears that they merge the balance of equities and public interest considerations together. *See* Opp. at 20.[12] In contrast, Defendant asserts that the longer Plaintiffs remain in the market, the more damage to its brand and its market share occurs. *See* Tr. At 68:1-11. Both parties have a considerable presence in the industry, and neither party asserts that their business will suffer a loss so great that it would impact the business' continued existence. *See Minard Run Oil Co.*, 670 F.3d at 255. Therefore, the Court finds the third factor weighs in favor of Defendant.

### D. Public Interest

Finally, the Court must consider whether a preliminary injunction would generally promote public policies, and specifically promote policies relevant to the instant case. *Aleynikov*, 2012 WL 6603397 at *15.

Here, Plaintiffs argue that cheaper fans benefit consumers. *See* Opp. at 20. Such an argument, however, is unpersuasive when the Court must acknowledge that "the patent laws reflect a balance between that public policy and the policy of encouraging innovation through the grant of a limited patent monopoly." *Fresenius Kabi USA, LLC*, 2016 WL 5348866 at *14 (holding that the benefit of cheaper generic drugs for the public does not outweigh the balance achieved by Congress in the establishment of patent rights to a limited monopoly). Thus, "[w]here the patent

---

[12] In Plaintiffs' supplemental letter to the Court, Plaintiffs assert that just under 10% of their total sales were derived from the sale of foldable fans, neck fans, and handheld fans. *See* ECF No. 46.

hold is acting within the lawful scope of its patent, public policy favors an injunction." *Id.* Therefore, the Court finds that the fourth factor weighs in favor of Defendant.

The Court concludes that the prerequisites necessary for a preliminary injunction have been met, and on balance, equity requires the issuance of a preliminary injunction against Plaintiffs.

### V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Preliminary Injunction, (ECF No. 24), is **GRANTED.** An order consistent with this Opinion will be entered.

August 6, 2025

KAREN M. WILLIAMS, U.S.D.J.